907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David J. SMITH and Mary Gamble-Smith, Plaintiffs-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 89-1625.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and JOHN W. POTTER, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff David J. Smith ("Smith") and his wife Mary Gamble-Smith appeal from the May 5, 1989 order of the district court granting summary judgment in favor of defendant General Motors Corporation ("GM"). Smith contends that the district court erred in granting summary judgment for GM as he was employed pursuant to an implied just cause contract; therefore, a genuine issue of material fact exists as to whether there was just cause for his discharge. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 The facts in this case are not in dispute. Smith was employed by GM from June 1986 through September 1, 1987.[1] On January 20, 1987, a female GM employee complained to upper management that Smith had sexually harassed her. On January 23, 1987, the GM Director of Personnel, James Berschback ("Berschback") formally interviewed and counseled Smith regarding the sexual harassment claim.
 
 
 3
 At the counseling meeting, Smith admitted that he had been involved in several incidents that could be construed as sexual harassment. Berschback warned Smith that further reports of sexual harassment could result in his discharge from GM. Subsequent to their meeting, several other female employees lodged additional complaints of sexual harassment against Smith. GM decided to investigate the matter. GM personnel met with the female employee who initially complained about Smith and interviewed five other female GM employees and one female not employed by GM.[2]
 
 
 4
 After GM personnel conducted the investigation, GM upper management met with Smith on September 1, 1987. In attendance were John Middlebrook, Vice President of Marketing and Production Planning; Jay Stark, an Executive Director for GM and Smith's immediate supervisor; and James Berschback. The GM officials informed Smith of the numerous incidents of sexual harassment that had been revealed through the investigation, and offered him the opportunity to resign. Smith refused and was immediately terminated.
 
 
 5
 On September 18, 1987, Smith requested a review of his discharge through GM's "Corporate Open Door Policy."[3] As a result of his request, on October 13, 1987, Smith met with Michael Sweeney ("Sweeney") to discuss his discharge. Between October 13 and December 4, 1987, Smith had additional contacts with Sweeney concerning his discharge. On December 4, 1987, Smith received a written Open Door determination, advising him that the Open Door investigation failed to reveal any reason to reverse the termination decision.
 
 
 6
 During the course of his employment, Smith had entered into an express Employment Agreement with GM which provided that he was employed as a month-to-month employee.[4] Furthermore, throughout his employment, Smith executed "Compensation Statements" that not only incorporated the at-will employment relationship contained in the Employment Agreement, but also required Smith to acknowledge that no other employment agreement existed or could be implied.[5] Smith's status as a month-to-month employee and his inability to modify or alter his employment relationship was specifically set forth in his employee handbook "Working with General Motors."[6]
 
 
 7
 On December 21, 1987, Smith filed a four-count complaint in Wayne County Circuit Court alleging breach of an implied employment contract, failure to pay accrued bonuses, slander and intentional infliction of emotional distress. Smith's wife also brought a claim for loss of consortium. GM removed the case to federal court on January 8, 1988. After full discovery, GM filed a motion for summary judgment as to all of the counts in Smith's complaint. A hearing on the motion was held on May 4, 1989, at which time the district court granted GM's motion for summary judgment. Smith filed a timely notice of appeal on May 25, 1989. Smith has not appealed either the dismissal of his claims for slander or his claims for intentional infliction of emotional distress.
 
 II.
 
 8
 Smith contends that the Open Door policy gave rise to an implied just cause employment contract. Furthermore, he contends that GM's sexual harassment policy also created a just cause contract. Therefore, a genuine issue of material fact exists as to whether there was just cause for his discharge. We disagree.
 
 
 9
 We are required to conduct a de novo review of the district court's grant of summary judgment in favor of GM. See Brukart v. Post-Browning, Inc., 859 F.2d 1245, 1249 (6th Cir.1988). Summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 10
 After careful review of the briefs and the record, we conclude that the district court did not err in its grant of summary judgment, as genuine issues of material fact do not remain. Several cases from this jurisdiction, have held that, as a matter of law, the relationship between GM and its employees is terminable at-will. See Taylor v. General Motors Corporation, 826 F.2d 452 (6th Cir.1987); Charles Sonneberger v. General Motors Corporation, No. 86-72646 and 86-73935 (E.D.Mich., Sept. 30, 1987), aff'd., 849 F.2d 1474 (6th Cir.1988); Singal v. General Motors Corporation, 447 N.W.2d 152 (1989); accord Schau v. General Motors Acceptance Corporation, No. 84-C-310 (N.D.Ill. Jan. 9, 1986). In Taylor, we upheld the discharge of a plaintiff who had executed an Employment Agreement and Compensation Statements identical to those signed by Smith in the present action. There, we determined that, as a matter of law, the language contained in both the Employment Agreement and the Compensation Statements rendered Taylor's employment terminable at-will. Id. at 458. Taylor also raised the argument that GM's Open Door policy gave rise to a just cause employment contract. We found, however, that the Open Door policy did not override the unequivocal at-will arrangement. Id. at 458.[7]
 
 
 11
 The evidence presented shows that the express terms of the Employment Agreement, the Compensation Statements and the GM handbook all confirmed that Smith was a month-to-month employee, and thus an at-will employee. Furthermore, the Compensation Statements and the GM handbook explicitly stated that Smith's employment status could not be altered or modified. Therefore, even if the Open Door policy or GM's sexual harassment policy could be construed as creating a just cause contract, they could not alter or modify Smith's employment agreement. Neither the terms of the employment agreement, nor the Open Door policy gave Smith a right to a just cause determination before his termination. Smith was terminable at-will.
 
 
 12
 We agree with the district court that Taylor is the controlling case in this matter. Therefore, the district court correctly granted GM's motion for summary judgment as Smith failed to raise a genuine issue of material fact as to his wrongful discharge claim.[8]
 
 
 13
 For the foregoing reasons, we AFFIRM the judgment of the Honorable Bernard A. Friedman, United States District Judge for the Eastern District of Michigan.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sat by designation
 
 
 [1]
 Smith started his employment with GM as a General Motors Institute Cooperative employee. At the time of his discharge, he had attained the position of General Director of North American Passenger Car Planning
 
 
 [2]
 The interviews were conducted between January 20, 1987 and August 26, 1987
 
 
 [3]
 The "Open Door Policy" is an internal mechanism at GM whereby employees may seek intervention on employment decisions
 
 
 [4]
 The Employment Agreement with GM provides, in pertinent part:
 The Employee acknowledges that his employment is from month-to-month only on a calendar month basis. Record at 45, Exhibit 1, Smith v. General Motors Corporation, (No. 88-70080)
 
 
 [5]
 The Compensation Statement provides, in pertinent part:
 When signed and accepted, this statement, for the effective period hereof, becomes a part of my basic 'Employment Agreement,' in accordance with the terms thereof ...
 * * *
 There are no other arrangements, agreements, understandings or statements, verbal or in writing, regarding the foregoing ... and no modification or amendment hereof ... shall be effective, unless endorsed hereon in writing and initialed by me and my employer.
 Record at 45, Exhibit 1, Smith v. General Motors Corporation, (No. 88-70080).
 
 
 [6]
 The employee handbook provides, in pertinent part:
 ... [t]he policies and procedures in the booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship (which in fact may not be altered, amended or extended by any employee, representative or agent of GM ) ...
 Record at 40, Exhibit 1, Smith v. General Motors Corporation, (No. 88-70080) (emphasis added).
 
 
 [7]
 Smith also contends that GM's sexual harassment policy gave rise to an implied employment contract. As support for this argument, he relies on Diggs v. Pepsi Cola Metropolitan Bottling Company, Inc., 861 F.2d 914 (6th Cir.1988). First, unlike the plaintiff in Diggs, Smith failed to identify any express oral promises that were made to him by supervisory personnel. Second, Diggs did not involve an employee such as Smith who had: executed an Employment Agreement stating that he was terminable at-will; received an employee handbook that reiterated the at-will nature of his employment at GM; and possessed sufficient knowledge that his employment relationship could not be altered or modified by written or oral statements. We, therefore, conclude that Smith's claim that GM's sexual harassment policy gave rise to an implied just cause contract is frivolous
 
 
 [8]
 Smith also raises a claim for negligent breach of contract. First we note that Smith did not raise this argument before the district court; therefore, it is not properly before this court. See Sigmon Fuel Co. v. TVA, 754 F.2d 162, 164-65 (6th Cir.1985). Second, we specifically rejected the tort of negligent breach of contract in Haas v. Montgomery Ward & Co., 812 F.2d 1015 (6th Cir.1987)