KROHN v SEDGWICK JAMES OF MICHIGAN, INC

Docket No. 211111. Submitted July 5, 2000, at Detroit. Decided January 12, 2001, at 9:05 A.M.

Norine Krohn brought an action in the Oakland Circuit Court against Sedgwick James of Michigan, Inc., and Mark Miller, seeking damages as a result of the termination of her employment with Sedgwick James of Michigan and alleging that the termination was the result of age-based discrimination in violation of the provisions of the Michigan Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* The plaintiff had been hired in 1981, had held various positions, and had eventually become senior vice president of human resources. In 1993, Michael Rastigue, who was then the managing executive for Sedgwick James of Michigan and the plaintiff's supervisor, hired a group of employees from a competing firm. The plaintiff alleged that Rastigue, in referring to this new group of employees, had remarked "out with the old and in with the new." In July 1995, Rastigue was transferred to another office, and defendant Miller became managing executive for Sedgwick James of Michigan. In June 1996, the plaintiff, then fifty-seven years old, and several other employees were dismissed, allegedly as part of a downsizing effort brought on by financial necessity. Before trial, the defendants filed a motion in limine to exclude certain evidence, including any reference to Rastigue's remark. The court, Robert C. Anderson, J., granted the defendants' motion to exclude Rastigue's remark. Following a trial at which the thrust of the defense was that the plaintiff's employment had been terminated because of financial necessity, the jury returned a verdict of no cause of action. The plaintiff appealed, claiming among other things error as a result of the trial court's exclusion of testimony concerning Rastigue's remark.

The Court of Appeals *held*:

1. Courts are reluctant to overturn a jury's verdict, particularly if there is ample evidence to justify the jury's decision, and will not do so on the basis of an erroneous evidentiary ruling unless refusal to take this action would be inconsistent with substantial justice.

2. After the plaintiff in an employment discrimination case involving alleged wrongful termination establishes a prima facie

case of termination as the result of unlawful discrimination, the defendant may present evidence of any legitimate nondiscriminatory reason for terminating the plaintiff's employment. If the defendant carries the burden of establishing a nondiscriminatory reason, the burden then shifts to the plaintiff to show that the reason articulated by the defendant was not the true reason, but rather was a mere pretext for discrimination.

3. Because the defendant had asserted the defense that the termination of the plaintiff's employment was the result of legitimate financial reasons, the plaintiff had the burden of proving that the defendants' articulated reason was not the true reason, but rather was a mere pretext for discrimination. Accordingly, the issues with respect to the admission of testimony concerning the statement made by the defendants' agent were whether the statement was relevant to the establishing of unlawful discrimination and, if the statement was relevant, whether its relevance was substantially outweighed by the risk of unfair prejudice.

4. In employment discrimination cases, federal courts have adopted a four-part test to assess the relevancy of isolated or stray remarks. In determining the admissibility of evidence of such remarks, a trial court should consider whether the disputed remarks were made by the decisionmaker or by an agent of the employer uninvolved in the challenged decision, whether the disputed remarks were isolated or part of a pattern of biased comments, whether the disputed remarks were made close in time or remote from the challenged decision, and whether the disputed remarks were ambiguous or were clearly reflective of discriminatory bias.

5. The record shows that although the disputed remark was made by Rastigue while he was the plaintiff's supervisor, Rastigue was not the person who decided that the plaintiff's employment should be terminated. The remark was not directed toward the plaintiff, but was rather made in reference to recently hired employees, and it was made more than two years before the plaintiff's employment was terminated. Under these circumstances, any discriminatory intent was ambiguous. Accordingly, because the remark was an ambiguous, isolated, and temporally remote statement by a person who was not involved in the decision to terminate the plaintiff's employment, the proffered evidence was not relevant, and the trial court did not abuse its discretion by excluding that evidence.

6. Even if the remark were found to have some minimal relevance, the probative value would have been substantially outweighed by the harm likely to result from its admission.

Affirmed.

EVIDENCE — CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — STRAY REMARKS.

>   A court assessing the relevancy of proffered evidence of remarks
>   asserted to show discrimination in an employment discrimination
>   case should consider whether the disputed remarks were made by
>   the decisionmaker or by an agent of the employer uninvolved in
>   the challenged decision, whether the disputed remarks were iso-
>   lated or part of a pattern of biased comments, whether the dis-
>   puted remarks were made close in time or remote from the chal-
>   lenged decision, and whether the disputed remarks were ambigu-
>   ous or were clearly reflective of discriminatory bias.

*Stark and Gordon* (by *Deborah L. Gordon* and *Carol A. Laughbaum*), for the plaintiff.

*Cox, Hodgman & Giarmarco, P.C.* (by *Andrew T. Baran* and *William H. Horton*), for the defendants.

Before: SAAD, P.J., and CAVANAGH and METER, JJ.

SAAD, P.J.

### I. NATURE OF THE CASE

In this age-based employment discrimination case, plaintiff seeks to overturn the jury's verdict because of the trial court's evidentiary ruling made pursuant to defendants' motion in limine.[1] Defendants asked the trial court to exclude the statement "out with the old and in with the new" made by plaintiff's former supervisor. Plaintiff contends that this is an ageist statement that constitutes direct evidence that she was fired because of her age as part of defendants' plan to terminate older employees and replace them with younger employees. Conversely, defendants claim that the remark is irrelevant because it (1) is

---

[1] Plaintiff also claims the jury's verdict was against the great weight of the evidence and contrary to law. We find no merit in those issues, which will be addressed in the opinion.

ambiguous, (2) was an isolated remark, (3) was made long before plaintiff's termination, and (4) was made by a manager who had no involvement in plaintiff's termination. Further, defendants say that any possible relevancy of this remark is substantially outweighed by its potential prejudicial effect. The trial court agreed with defendants' position and ruled the proffered evidence inadmissible.

Because this precise issue has not been addressed by our appellate courts in a published opinion, this narrow issue is one of first impression and one on which we will seek guidance from federal precedent. Accordingly, we have reviewed a line of authority from the federal courts known as stray remarks cases. The federal courts in these employment discrimination cases assess the relevancy of stray remarks by reviewing the following factors: (1) Were the disputed remarks made by the decisionmaker or by an agent of the employer uninvolved in the challenged decision? (2) Were the disputed remarks isolated or part of a pattern of biased comments? (3) Were the disputed remarks made close in time or remote from the challenged decision? (4) Were the disputed remarks ambiguous or clearly reflective of discriminatory bias? We hold that our courts should review these factors in ruling on the relevancy of similar comments, and we further hold that, here, the trial court properly excluded the disputed remark.

II. FACTS AND PROCEEDINGS

Defendant Sedgwick James of Michigan, Inc.,[2] hired plaintiff as an executive secretary in April 1981. Plain-

---

[2] The defendant company was then known as Fred S. James & Company of Michigan.

tiff held several positions while at the company and, in 1995, became senior vice president of human resources while continuing to work as an executive secretary. During her employment, plaintiff worked under various supervisors, including Michael Rastigue, who was managing executive for Sedgwick James of Michigan during the early to mid-1990s. In February 1993, Rastigue hired a group of employees, including defendant Mark Miller, from a competing firm, Marsh & McClennan. Miller later took over Rastigue's job as managing executive in July 1995, after Rastigue transferred to another office.

After company executives discovered that Sedgwick James of Michigan was operating at a significant financial deficit, Miller terminated the employment of plaintiff, along with the employment of several other employees, as part of a downsizing effort in June 1996. Following her dismissal, plaintiff filed this age discrimination claim against Miller, Sedgwick James of Michigan, and its parent company, Sedgwick James, Inc. Plaintiff, fifty-seven years old at the time her employment was terminated, alleged that defendants fired her because of her age in violation of the Michigan Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

Before trial, defendants filed a motion in limine to exclude certain potential evidence, including Rastigue's remark "out with the old and in with the new." According to plaintiff's deposition testimony, Rastigue made this comment in reference to the new group of employees hired from Marsh & McClennan.[3] The trial

---

[3] On appeal, plaintiff asserts that Rastigue made other age-related comments. In this connection, plaintiff points to her deposition testimony and her own affidavit. However, plaintiff never submitted the deposition pages

court granted defendants' motion to exclude the remark, but did not articulate its reasons for doing so on the record. That is, the trial court did not specify whether it excluded the proffered evidence as irrelevant or as more prejudicial than probative.

At trial, plaintiff presented evidence of her qualifications and history with Sedgwick James of Michigan as well as statistical evidence regarding the companies' termination of employment of employees over the age of forty. In response, defendants presented several present and former employees of the Sedgwick James companies who testified about financial problems in the Michigan office resulting, in part, from the expense of highly paid employees who were performing low-level work. The defense witnesses further testified that personnel changes and reorganization were necessary for Sedgwick James of Michigan to remain in operation.

Defense witnesses testified that, despite these changes, the company continued to lose money and executives determined that significant revenue could be saved by transferring the accounting and human resources functions of Sedgwick James of Michigan to the Chicago office, thereby eliminating several positions, including plaintiff's. The defense witnesses denied plaintiff's allegation that plaintiff's age was a factor in their decision to terminate her employment. The jury apparently accepted defendants' business

---

to the trial court and did not submit her affidavit until after the trial. Accordingly, because the additional alleged remarks were not offered by plaintiff before or during trial and were not considered by the trial court, we cannot consider them on appeal. *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 579-580; 609 NW2d 593 (2000).

reasons for the termination of plaintiff's employment and returned a verdict of no cause of action.

### III. ANALYSIS

#### A. STANDARD OF REVIEW

Plaintiff avers that the trial court's exclusion of Rastigue's comment so prejudiced her case that the jury's verdict should be reversed. Our courts are reluctant to overturn a jury's verdict, particularly if there is ample evidence to justify the jury's decision, and we will not do so on the basis of an erroneous evidentiary ruling unless refusal to take this action would be inconsistent with substantial justice. MCR 2.613(A); MRE 103(a); *Chmielewski v Xermac, Inc*, 216 Mich App 707, 710-711; 550 NW2d 797 (1996), aff'd 457 Mich 593; 580 NW2d 817 (1998). It is well established that this Court reviews a trial court's evidentiary rulings for an abuse of discretion and, in making that determination, we consider the facts on which the trial court acted to determine whether an unprejudiced person "would say that there is no justification or excuse for the ruling made." *Roulston v Tendercare (Michigan), Inc*, 239 Mich App 270, 282; 608 NW2d 525 (2000).

In general, in an employment discrimination case, after the plaintiff establishes a prima facie case, the defendant presents evidence of its legitimate, nondiscriminatory reason for terminating the plaintiff's employment. *Kerns v Dura Mechanical Components, Inc (On Remand)*, 242 Mich App 1, 12; 618 NW2d 56 (2000). Thereafter, the plaintiff bears the burden of proving that the employer's articulated reason was not the true reason, but rather a mere pretext for dis-

crimination. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 359; 597 NW2d 250 (1999). Here, plaintiff would have presumably offered Rastigue's remark to persuade the jury that defendants' asserted reason for the termination of her employment (financially induced downsizing) was untrue and that her age made a difference in defendants' decision to terminate her employment.

The analysis used to determine the admissibility of an agent's remark is particularly important in this type of employment discrimination case because the central question the jury must decide is not *what* occurred, but *why* the action was taken by the employer. Because the controlling issue is motivation (the reason for the decision), courts must be particularly careful in making determinations regarding the relevancy of remarks by agents of corporate defendants. Obviously, remarks indicating bias by the decisionmaker directed at the discharged employee would be highly probative when made at or about the time of the decision. On the other hand, allegedly biased but, in fact, ambiguous remarks by an agent who is not involved in the decision and made remote in time from the decision would hardly be relevant and certainly would be highly prejudicial precisely because motivation is the key issue in this type of employment discrimination case. Thus, our review of whether the remark was properly excluded requires more than merely labeling the comment a "stray remark." The important issues here are whether the employee's remark is relevant to show that defendants made the employment decision on the basis of plaintiff's age and whether, if relevant, the remark's relevance

is substantially outweighed by the risk of unfair prejudice.

## B. RELEVANCE

Because a work-related comment may be uttered in myriad factual contexts, a simple definition of an inadmissible stray or isolated remark is not feasible and would not facilitate a proper determination of its relevance at trial. The proffered evidence may range from an innocuous remark made by an employee with no involvement in the alleged adverse employment action long before such action takes place to a blatantly discriminatory comment made by a decisionmaker at the time the adverse action occurs. A trial court's determination of the probative value of a remark depends on where it falls on that continuum. Accordingly, a trial court must consider several factors to determine whether the comment in issue is relevant to show that an employer took the challenged action because of the employee's age. As stated above, because our state courts have not articulated those factors in a published opinion, we look to various federal court decisions for guidance.[4]

## C. STRAY REMARKS CASES[5]

In *Cooley v Carmike Cinemas, Inc,* 25 F3d 1325 (CA 6, 1994), the defendant appealed from a jury ver-

---

[4] The issue has been addressed in various federal court decisions interpreting the federal Civil Rights Act and state civil rights legislation. While that precedent is not binding in Michigan, it is helpful, and, therefore, we often use it as guidance in interpreting the Michigan Civil Rights Act, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a). *Radtke v Everett,* 442 Mich 368, 381-382; 501 NW2d 155 (1993).

[5] By citing these cases, we neither reject nor adopt the courts' conclusions concerning the relevancy of each remark; rather, we include them in

dict in favor of the plaintiff and argued that the district court abused its discretion in admitting certain ageist remarks made by the defendant's president. *Id.* at 1327-1329. In deciding the issue, the Sixth Circuit Court of Appeals emphasized that the admissibility of the proffered comments requires the court to balance the relevancy of the comments against their prejudicial effect. *Id.* at 1330. The Court reviewed various cases defining stray remarks and set forth several factors to determine the admissibility of statements offered to show an employer's discriminatory bias. *Id.* at 1330-1331. Specifically, the Court opined:

> In age discrimination cases, this court has examined statements allegedly showing employer bias by considering whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination. [*Id.* at 1330.]

Other federal courts have considered these factors in a number of procedural contexts to determine the probative value of an agent's remarks. In *Lawrence v Syms Corp*, 969 F Supp 1014 (ED Mich, 1997), the plaintiff attempted to defeat the employer's motion for summary judgment by raising a genuine issue of material fact to rebut the employer's assertion that it had terminated the plaintiff's employment because of poor performance. *Id.* at 1017. The plaintiff presented his supervisor's comment "that the defendant was 'out to get' the oldest store managers who were well paid, and replace them with younger, more energetic peo-

---

our analysis to review the four factors to be used by our courts in making relevancy determinations.

ple." *Id.* at 1018. The court concluded that, because
the comment was made up to two years before the
plaintiff's employment was terminated, it was isolated
and remote in time and its meaning was ambiguous.
*Id.* Further, although the plaintiff's supervisor made
the comment, no evidence showed that it was related
to the decision to discharge the plaintiff. *Id.* There-
fore, the court ruled that the remark did not raise an
issue of material fact showing the employer's discrim-
inatory motivation because it was isolated, remote in
time, vague, and unrelated to the discharge decision.
*Id.*

In *Phelps v Yale Security, Inc*, 986 F2d 1020 (CA 6,
1993), the plaintiff appealed a district court's grant of
judgment notwithstanding the verdict in favor of the
defendant. At trial, the plaintiff presented evidence
that her age was a factor in her dismissal by present-
ing, among other evidence, comments by her supervi-
sor, Ray McCulloch. *Id.* at 1025. The plaintiff alleged
that, when she was transferred to McCulloch's office
from her job as the plant manager's secretary, McCul-
loch told her she was too old to be the plant man-
ager's secretary and that he later said that her upcom-
ing fifty-fifth birthday "was a cause for concern." *Id.*
In considering whether the manager's remarks estab-
lished that the defendant was motivated by the plain-
tiff's age, the court opined:

> Age-related comments referring directly to the worker
> may support an inference of age discrimination. However,
> as Yale Security argues, isolated and ambiguous comments
> " 'are too abstract, in addition to being irrelevant and preju-
> dicial, to support a finding of age discrimination.' " Because
> [the manager] made the statements nearly a year before the
> layoff, the comments were made too long before the layoff
> to have influenced the termination decision. Moreover, the
> statement regarding [the plaintiff's] birthday was too ambig-

uous to establish the necessary inference of age discrimination. [*Id.* at 1025-1026 (citations omitted).]

Thus, regardless of the procedural context, federal courts have consistently held that isolated or vague comments made by nondecisionmakers long before the adverse employment decision is made are not probative of an employer's discriminatory motivation. See, also, *McDonald v Union Camp Corp*, 898 F2d 1155, 1161, n 3, 1162 (CA 6, 1990) (comment by a person other than the decisionmaker that "a senior salesman at age 55 'could be cheaply replaced with a younger salesman'" does not raise an issue of material fact regarding the employer's motives); *Stone v Autoliv ASP, Inc*, 210 F3d 1132, 1140 (CA 10, 2000) (remark that "'at [the plaintiff's] age, it would be difficult to train for another position'" or "'difficult to find a new job'" was insufficient to survive a motion for summary judgment because it was unrelated to the termination decision and was too ambiguous to show discriminatory animus); *Shorette v Rite Aid of Maine, Inc*, 155 F3d 8, 13-14 (CA 1, 1998) (inquiry about the plaintiff's age and when he planned to retire, statement that employer could not "afford" to keep the plaintiff employed, and comment that the plaintiff had a "perfect case of age discrimination" were inadmissible to show discriminatory motivation because they were isolated, ambiguous, or not made by the decisionmaker).

We find the factors considered in this line of federal cases useful for our analysis of the relevance of Rastigue's remark "out with the old and in with the new." Accordingly, our first inquiry is whether the proffered comment was made by an agent of the employer involved in the decision to terminate plaintiff's employment. The record shows that, although

Rastigue was plaintiff's supervisor at the time he made the comment, he was not her supervisor when she lost her job. Rastigue left his position as an executive manager at Sedgwick James of Michigan approximately one year before plaintiff's employment was terminated, and no evidence suggests that he had any decisionmaking authority regarding the discharging of plaintiff. Miller took over Rastigue's position as executive manager and plaintiff's supervisor in July 1995, and it was Miller who terminated plaintiff's employment in June 1996. Therefore, the proffered remark cannot be attributed to the employer, because it was not made by a person involved in the termination of plaintiff's employment.

Moreover, Rastigue did not make the proffered remark regarding plaintiff. Instead, plaintiff testified that she heard Rastigue make the comment in reference to the new, recently hired employees. Those new employees included defendant Miller who, according to the trial record, joined Sedgwick James of Michigan in February 1993.[6] Further, not only was Rastigue's comment directed at other people, he made it more than two years before plaintiff's employment was terminated by defendants. Accordingly, the comment was both isolated and remote in time from the adverse employment action.

Finally, although plaintiff contends that the comment was age related, we find that, under the circumstances in which Rastigue uttered it, the remark was

---

[6] The hire date of these new employees, February 1993, was not presented to the trial court during the motion in limine, but witnesses testified about this date during trial. However, when the trial court ruled on the motion, it was aware that Rastigue had left Sedgwick James of Michigan in mid-1995. Therefore, the trial court could properly conclude that Rastigue made the remark at least a year before the termination of plaintiff's employment.

certainly ambiguous and clearly age neutral.[7] Rastigue made the comment when several new employees began working for the company and no evidence suggests that the employment of other, older employees was terminated at that time or that other employees were somehow replaced by younger workers. In this context, the comment "out with the old and in with the new" does not carry with it a discriminatory connotation.

Therefore, considering the factors outlined above, the trial court did not abuse its discretion in excluding this evidence.[8] Indeed, the trial court would have been correct to hold this evidence to be irrelevant.

### D. PREJUDICIAL EFFECT

We recognize that in employment discrimination cases, a plaintiff's obligation to show the employer's true motivation is often a difficult task. To counter the employer's reasons for the termination of a plaintiff's employment, the plaintiff must introduce evidence of what the plaintiff believes to be the "true" (illicit) motivation. *Wilcoxon, supra* at 359. To show that motivation, a plaintiff may attempt to introduce biased remarks by one or more of the employer's agents. Yet, as stated above, some remarks may be extremely probative while others are wholly irrelevant. If the proffered evidence is determined to have some bearing on the employer's motivation, however, it is imperative that the trial court balance its proba-

---

[7] Indeed, the phrase "out with the old and in with the new" could apply to any person or thing and does not inherently suggest a discriminatory animus against someone in plaintiff's protected class.

[8] As noted above, during the hearing on the motion in limine, the trial court did not articulate whether it excluded the evidence because it was irrelevant or because it was more prejudicial than probative.

tive value against the risk of unfair prejudice. MRE 403.

Remarks made by a single employee that are offered to show a discriminatory motive by a defendant corporation involve a particularly high risk of unfair prejudice. A biased comment by a company agent is especially inflammatory because of the jury's tendency to attribute an agent's comments to the company itself, regardless of whether the agent was involved in the adverse employment action at issue and regardless of whether the remark reflects or repudiates company policy. The risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer.

Thus, were we to find that Rastigue's comment had some minimal relevance in light of the four factors discussed above, its probative value would have been substantially outweighed by "the harm likely to result from its admission." *Cooley, supra* at 1330; MRE 403. Because the ambiguous and isolated remark had nothing to do with the termination of plaintiff's employment and was made by a former supervisor remote in time from when plaintiff's employment was terminated, its admission would have served only to inflame, mislead, or confuse the jury. Moreover, its admission would have impermissibly induced the jury to attribute the remark to defendants, even though the evidence failed to show that defendants considered plaintiff's age in their decision to terminate her employment. In brief, this irrelevant evidence would have been highly inflammatory.

Accordingly, we find that the trial court did not abuse its discretion by excluding Rastigue's remark. Further, in reviewing the four factors discussed above, we find that the disputed evidence is irrelevant. Finally, were we to find minimal relevancy in the "stray remark," we further hold that this disputed evidence was substantially more prejudicial than probative.[9]

Affirmed.

---

[9] Plaintiff claims that the jury's verdict was against the great weight of the evidence. We disagree. An appellate court may overturn a jury verdict " 'only when it was manifestly against the clear weight of the evidence.' " *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 194; 600 NW2d 129 (1999), quoting *Watkins v Manchester*, 220 Mich App 337, 340; 559 NW2d 81 (1996). The weight of the evidence showed that plaintiff's age was not a factor in the termination of plaintiff's employment. Several witnesses testified about the financial problems at Sedgwick James of Michigan and that personnel changes and reorganization were necessary for the company to remain in operation. Further, witnesses testified that, despite some initial changes, the company continued to lose money and that management then decided to transfer the human resources and accounting functions to the Chicago office.

Although plaintiff presented expert testimony regarding statistical disparities in the terminations of the employment of employees over forty years of age, during cross-examination defendants established that the calculations did not distinguish terminations based on poor performance and did not take into account the skill levels or positions of replacement workers. The jury determines the weight given to expert testimony. *Phillips v Deihm*, 213 Mich App 389, 401-402; 541 NW2d 566 (1995). We agree with defendants' contention that the flaws in the statistical analysis provided the jury with ample reason to question the testimony and conclusions of plaintiff's expert. Given the evidence, the jury's verdict was not manifestly against the clear weight of the evidence.

Plaintiff also avers that the jury's verdict was contrary to law because defendants did not overcome the presumption of discrimination in that they failed to articulate a legitimate reason for retaining Jennifer Hartman to perform duties that were similar to those performed by plaintiff. However, the evidence shows that Hartman had skills that plaintiff lacked and that plaintiff would have required significant training to perform Hartman's job. This evidence constituted a legitimate reason for defendants' retention of Hartman, rather than plaintiff. The jury's verdict is, therefore, not contrary to law.