*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALANA KIMBROUGH,

UNPUBLISHED
June 16, 2022

Plaintiff-Appellant,

v

No. 357027
Wayne Circuit Court
LC No. 19-007849-CD

MWT OF ALLEN PARK, LLC,

Defendant-Appellee,

and

AT&T,

Defendant.

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff Alana Kimbrough interviewed for a sales position at defendant MWT of Allen Park, LLC's Allen Park store. After plaintiff was not offered the position, she filed this lawsuit alleging that defendant had wrongly refused to hire her because of her gender. Plaintiff now appeals the trial court's April 15, 2021 order, which dismissed plaintiff's claim against defendant. We affirm.

## I. BACKGROUND

Defendant is an authorized retailer for AT&T and has multiple locations throughout Michigan.[1] Paul Yousef is one of defendant's owners. At all relevant times, Isa LeBlanc, who is a woman, was the Allen Park store manager. LeBlanc also managed stores in Garden City and Taylor.

---

[1] There is no indication that AT&T was served.

-1-

In April 2019, the Allen Park store had a sales representative position open. On April 4, 2019, plaintiff, who had previously worked for Sprint, applied for the position. AnDretta Williams, who assisted defendant with screening applicants, instructed plaintiff to complete an online aptitude test. After the test was complete, Williams scheduled a "pre-interview assessment" with plaintiff over the phone. Based on their conversation, Williams "highly recommended" plaintiff for the position and scheduled plaintiff an interview with LeBlanc.

The interview took place on April 12, 2019. Plaintiff arrived early to the interview and was instructed to wait in the back of the store. According to plaintiff, the interview room and the break room were "in the same area." Two male employees were in the break room, and they asked plaintiff why she was there. Plaintiff informed them that she had an interview. According to plaintiff, the male employees laughed and said, "an interview?" When plaintiff responded, "yes," one of the men said "wow, a girl? The manager, he hasn't hired a girl in three years. We don't hire girls at this location."[2] The other man agreed. The two men in the breakroom were later determined to be Cody Rowe and Tanen Rowe, sales representatives in the Allen Park store.

According to LeBlanc, she was unable to attend plaintiff's interview and instructed Derek Smith, the assistant store manager at the time, to conduct the interview. Smith did so. Plaintiff testified that the interview was "a waste of time" because Smith did not ask her any relevant questions. Smith informed LeBlanc that plaintiff was not "a good fit" because she did not have "experience in retail sales" and seemed "shy." As a result, LeBlanc told Williams that she did not want to schedule a second interview with plaintiff.

Plaintiff contacted Williams after the interview and reported that a male employee had told her that LeBlanc "doesn't hire females. . . ." Williams informed Stephanie Riccobono, the head of human resources at the time, about the situation. Riccobono did not notify Yousef about plaintiff's complaint. Instead, Riccobono instructed Williams "to give [plaintiff] another opportunity" to interview, and Williams scheduled plaintiff an interview at defendant's store in Livonia. The interview took place in April 2019 with Fadil Shaqiri, the Livonia store manager. After a 30-minute interview, Shaqiri determined that plaintiff was not "the right fit" for the sales job given her lack of sales experience and her demeanor. Although Shaqiri informed Williams and Riccobono of this in an e-mail following the interview, defendant did not notify plaintiff that Shaqiri did not want to hire her.

In May 2019, plaintiff posted a negative review on Google about the Allen Park store and indicated that the store discriminated against women. Yousef saw plaintiff's Google review later that day. According to Yousef, he "reached out to" LeBlanc, Williams, and Riccobono "to try to find out what was going on." After Yousef "found out" that plaintiff had "interviewed at Allen Park and that she was told by one of the employees at that store that [defendant does not] hire women," Yousef called plaintiff to apologize. During the 16-minute phone call, Yousef noted that plaintiff had a "shy personality" and lacked sales experience. Nonetheless, Yousef asked LeBlanc

---

[2] Plaintiff testified that one of the men referred to the manager as "he" even though LeBlanc is a woman.

to schedule a meeting with plaintiff. LeBlanc did so, but plaintiff did not attend the meeting. Cecil Harris was later hired to work in the Allen Park store.

On May 28, 2019, Yousef e-mailed Riccobono and indicated that he wanted to discuss why plaintiff's complaint was not brought to his attention in a timely manner. Riccobono then sent the following e-mail:

> [LeBlanc] actually hired a different female that week so that is why I didn't raise the flag.
>
> That being said both [LeBlanc] and Brianna [Wilson[3]] have voiced opinions about preferring hiring men in the past, but we still send them women and they know they do need to consider them and hire them if they're good.

Plaintiff filed suit, alleging violations of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*. After the parties engaged in discovery, defendant moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). Defendant pointed out deficiencies in plaintiff's complaint and alleged that "discovery ha[d] revealed a lack of any material facts for trial." Specifically, defendant alleged that plaintiff's discrimination claim relied on hearsay statements that were allegedly made by "random, non-management employee[s]. . . ." Defendant also argued that evidence supported that plaintiff was not qualified for the position, that LeBlanc's "hiring record" supported that she consistently hired women, and that Harris was more qualified than plaintiff.

Plaintiff opposed the motion. Plaintiff argued that Tanen and Cody's statements, LeBlanc's "clear preference for hiring men," and the fact that plaintiff was not hired at the Livonia store supported a claim of direct discrimination. Plaintiff also argued that she had "strong circumstantial evidence of sex discrimination" because she was qualified for the position with defendant because she had "similar experience working for Sprint." Additionally, plaintiff argued that the position was given to a "male under circumstances giving rise to an inference of unlawful discrimination" and that defendant did not have "legitimate, non-discriminatory reasons for not hiring Plaintiff." According to plaintiff, defendant's argument that plaintiff did not have sufficient sales experience was "a pretext for discrimination."

After holding oral argument, the trial court granted defendant's motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). Although the trial court did not specify the grounds for granting defendant's motion for summary disposition, it relied on documentary evidence to support its decision. Accordingly, MCR 2.116(C)(10) is the appropriate basis for review. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576,

---

[3] Wilson was LeBlanc's former "coworker," who worked at one of defendant's stores in Detroit.

582; 794 NW2d 76 (2010) ("Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10).") (Quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

A trial court may "only consider substantively admissible evidence" when ruling on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant. We disagree.

MCL 37.2202(1)(a), which is contained in the Elliott-Larsen Civil Rights Act, prohibits an employer from "[f]ail[ing] or refus[ing] to hire or recruit . . . an individual with respect to employment . . . because of . . . sex. . . ." Plaintiff alleges that defendant violated the Elliott-Larsen Civil Rights Act by refusing to hire her because she is a woman. "This constitutes a claim of intentional discrimination, which may be proved by alternate methods. Intentional discrimination may be established by direct or indirect evidence." *Harrison v Olde Financial Corp*, 225 Mich App 601, 606; 572 NW2d 679 (1997) (citations omitted).

## A. DIRECT DISCRIMINATION CLAIM

Plaintiff first argues that she presented sufficient direct evidence of discrimination to survive summary disposition. We disagree.

"In some discrimination cases, the plaintiff is able to produce direct evidence of . . . bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (citations omitted). Direct evidence "is evidence that proves impermissible discriminatory bias without additional inference or presumption." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607 n 34; 886 NW2d 135 (2016). "[R]acial slurs by a decisionmaker constitute direct evidence of racial discrimination that is sufficient to get the plaintiff's case to the jury." *Harrison*, 225 Mich App at 610 (quotation marks and citation omitted).

> [T]his court has examined statements allegedly showing employer bias by considering whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-

making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act. . . .   [*Krohn v Sedgwick James of Mich, Inc*, 244 Mich App 289, 298-299; 624 NW2d 212 (2001) (quotation marks and citation omitted).]

In this case, plaintiff relies on the following evidence to support her claim of direct discrimination: (1) Cody and Tanen's alleged statements that the Allen Park store manager did not hire women, (2) Riccobono's e-mail to Yousef, which indicated that LeBlanc preferred to hire men, and (3) LeBlanc's hiring record.

With respect to the alleged comments made by Cody and Tanen, there is no evidence that they were decision makers. Indeed, evidence supports that they were merely sales representatives at the Allen Park store and that it was LeBlanc who decided who to hire. Thus, Cody and Tanen's alleged statements merely amount to circumstantial evidence of discrimination and standing alone cannot support plaintiff's claim of direct discrimination. See *Ercegovich v Goodyear Tire & Rubber Co*, 154 F3d 344, 356 (CA 6, 1998).

With respect to the e-mail that Riccobono sent to Yousef, we conclude that the statements contained in the e-mail amount to stray and isolated statements that were made at a time when LeBlanc was upset about issues that she was having with female employees.[4] Importantly, according to Riccobono, the statements referred to in the e-mail were made two years before plaintiff's interview. Riccobono testified that LeBlanc understood that qualified female applicants could not be denied employment opportunities because of their gender. LeBlanc acknowledged that she understood, and this is reflected in Riccobono's e-mail. Additionally, LeBlanc vehemently denied during her deposition that she made hiring decisions based on gender, and Riccobono denied during a deposition that LeBlanc had said that she preferred to hire men. According to Riccobono, LeBlanc "never said those words," and Riccobono agreed that the statement that she made to Yousef was not true. We conclude that LeBlanc's stray and isolated expressions of frustration do not support plaintiff's claim of direct discrimination.

Plaintiff also argues that statistics concerning the number of women that LeBlanc hired constitutes direct evidence of discrimination. As already stated, direct evidence "is evidence that proves impermissible discriminatory bias without additional inference or presumption." *Hecht*, 499 Mich at 607 n 34. The statistics do not by themselves prove discriminatory bias. Indeed, the statistics support that LeBlanc hired seven women and seven men at her stores between July 2018 and October 2019. More relevant to this appeal, between July 2018 and mid-April 2019, LeBlanc hired six men and two women. One of the women was hired to work in the Garden City store two days before plaintiff's interview at the Allen Park store. While plaintiff relies on evidence that LeBlanc only hired men at the Allen Park store between July 2018 and July 2019, evidence also supports that LeBlanc hired four women between August 2019 and January 2020. Importantly, the statistics do not include information concerning whether qualified female candidates consistently applied for the positions that were ultimately given to men. Because one would be

---

[4] We question whether the e-mail would be admissible at trial. Nonetheless, for purposes of completeness, we will consider the e-mail when deciding whether summary disposition was properly granted in favor of defendant.

required to make a presumption or an inference in order to conclude that hiring decisions in the Allen Park store were gender-based, the statistics standing alone do not provide plaintiff with direct evidence of discrimination.

Plaintiff also argues that she was not hired at the "Livonia store because she [is] a female." To support this argument, plaintiff cites Shaqiri's April 19, 2019 e-mail to Riccobono and Williams. However, plaintiff did not allege in any of her complaints that Shaqiri or any other employee from the Livonia store engaged in discrimination.[5] Rather, the allegations in plaintiff's complaints center solely on plaintiff's attempt to obtain employment at the Allen Park store. Additionally, plaintiff only named MWT of Allen Park as defendant. While plaintiff argued at oral argument before this Court that defendant improperly attempts to narrow the focus of her discrimination claim to the Allen Park store, this argument is entirely inconsistent with the allegations in the complaints. Indeed, the allegations in the complaints were entirely focused on the Allen Park location. Moreover, LeBlanc does not manage the Livonia store. Because plaintiff failed to plead a discrimination claim concerning the treatment that she received from employees at the Livonia store, plaintiff cannot use that evidence to support her direct discrimination claim. See *Bailey v Antrim Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357838); slip op at 6 ("A party is bound by [his or her] pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint. . . .") (quotation marks and citation omitted; alterations in original), lv pending.

## B. INDIRECT EVIDENCE OF DISCRIMINATION

In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination using indirect, or circumstantial evidence under the burden-shifting test outlined in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). *Hazle*, 464 Mich at 462. "The *McDonnell Douglas* approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Id*. (quotation marks and citation omitted). A plaintiff must

> present admissible evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [*Id*. at 467.]

Our Supreme Court has alternatively described the fourth element as requiring proof that "others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). "When the plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises." *Hazle*, 464 Mich at 463 (quotation marks and citation omitted).

"However, the fact that a plaintiff has established a prima facie case of discrimination under *McDonnell Douglas* does not necessarily preclude summary disposition in the defendant's favor."

---

[5] Plaintiff amended her complaint twice during the proceeding.

-6-

*Id*. at 463-464. Indeed, "the *McDonnell Douglas* prima facie case does not describe the plaintiff's burden of production, but merely establishes a rebuttable presumption." *Id*. at 464.

> [O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case. The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason. [*Id*. (citations and footnote omitted).]

"If the defendant meets this burden of production, the third prong of the presumptive test requires that the plaintiff prove by a preponderance of the evidence that the legitimate reason offered by the defendant was a mere pretext." *Meagher v Wayne State Univ*, 222 Mich App 700, 711; 565 NW2d 401 (1997).

With respect to whether plaintiff created a prima facie case, defendant argues that plaintiff failed to present evidence with respect to the third and fourth *McDonnell Douglas* factors. While we disagree with defendant that plaintiff failed to present evidence that she was minimally qualified for the position, we agree that plaintiff failed to present evidence concerning the fourth factor. The evidence establishes that defendant hired Harris, who has an extensive history in sales, to fill the sales position in the Allen Park store. While plaintiff had worked for Sprint in the past, she acknowledged that she did not "sell phones. . . ." Additionally, Smith, Yousef, and Shaqiri all considered plaintiff to be "shy," and plaintiff told Williams that she was "kind of shy." Importantly, defendant did not hire anyone for the sales position until two months after plaintiff's interview, thereby supporting that defendant was searching for a qualified candidate, as opposed to searching for a male candidate. In sum, plaintiff failed to submit evidence to support that Harris was "similarly situated" to plaintiff and that he was given the position "under circumstances giving rise to an inference of unlawful discrimination."

Additionally, defendant articulated "a legitimate, nondiscriminatory reason for" its decision not to hire plaintiff. See *Hazle*, 464 Mich at 472. The general consensus in this case was that plaintiff lacked the necessary sales experience and the requisite personality traits to be a successful retail sales associate. LeBlanc testified that she did not have time to "train somebody from the ground [up]." Although plaintiff notes that Williams found plaintiff to be qualified for the job, as noted by defendant, "[a]nswering questions in a standardized pre-interview questionnaire does not give someone sales 'experience' and is not a substitute for an actual in person, interactive interview." While plaintiff testified that Smith failed to ask her about her experience at Sprint and instead asked her a series of personal and irrelevant questions, Riccobono testified that defendant's "interview guide is all about sales experience." As a result, if an interviewee does not have sales experience, it is appropriate to "engage in a conversation and try to get to know them as a person, their personality to see if they're a good fit." This is consistent with the testimony of LeBlanc and Yousef. Consequently, the fact that Smith asked plaintiff personal questions does not support that defendant's reason for not hiring plaintiff was discriminatory.

In sum, we conclude that the trial court properly granted summary disposition in favor of defendant. Given this conclusion, it is not necessary to consider the remainder of the parties' arguments on appeal.

Affirmed.


/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle